UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT E. STYRE,<br><br>                       Petitioner,<br><br>    v.<br><br>DERRAL G. ADAMS, Warden<br><br>                       Respondent. | NO. 1:07-CV-01436-WWS (HC)<br><br>**ORDER GRANTING<br>§ 2254 PETITION** |

       State prisoner Robert E. Styre ("Styre" or "Petitioner") filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on September 7, 2007. Styre is serving a sentence of twenty-seven years to life for his January 1982 conviction for first degree murder in the Madera County Superior Court. The Petition challenges Governor Schwarzenegger's July 26, 2005 reversal of the Board of Prison Terms' ("BPT" or "Board") determination that Styre was suitable for parole. After a thorough review of the Petition, Respondent's Answer, Petitioner's Traverse, and all supporting documents, the court finds Petitioner is entitled to the relief requested and therefore **GRANTS** the Petition.

## I. Background

       In December 1980, Styre visited his son and his son's mother, Kathy Millus, in San Jose. He was approached by Richard Mosely, a member of the Hell's Angels gang. Mosley told him that John Bronstad (the victim) was a police informant, and threatened to harm Styre's son if he did not "take care of" Bronstad. Pet., Ex. C (Psychosocial Assessment, October 26, 2004) at 3.

Several days later, on December 14, 1980, the Petitioner told Ms. Millus that Mr. Bronstad needed to be taken care of that day. Pet., Ex. D (Life Prisoner Evaluation, March 1996) at 10. After Mr. Bronstad declined Styre's request to go for a drive, the Petitioner directed Ms. Millus to call Mr. Bronstad and ask for his help to move a car. *Id*. He agreed, and Ms. Millus, the Petitioner, and another acquaintance picked up Mr. Bronstad at his home. Pet., Ex. C at 4.

Instead of going to move the other car, the group drove up to the mountains on a logging road. They stopped the car in a secluded area. Pet., Ex. D at 11. Everyone got out of the car to walk around and smoke some hashish. *Id*. Styre admits that he had also been using methamphetamine on the day of the murder and for several days beforehand. Pet., Ex. B (Parole Hearing Transcript, March 14, 2005) at 14. At some point while the group was walking, Petitioner called out to the victim, said "goodbye," and shot him once in the chest. Pet., Ex. D at 11. The Petitioner and the other individuals fled the scene. *Id*. Mr. Bronstad's remains were discovered several months later. Styre was arrested and later convicted of murder.

Prior to the instant conviction, Petitioner had an extensive juvenile record, including convictions for auto theft and various drug related offenses. Pet., Ex. D at 12-13. He also has one additional adult conviction for burglary in 1979. *Id*. At his March 2005 parole hearing, Petitioner stated that he came from an abusive home, both of his parents were alcoholics, and that he turned to drugs at a very young age. Pet., Ex. B at 18-19, 42-43.

To his credit, Petitioner made tremendous strides while in prison. He received three citations for non-violent disciplinary infractions early in his prison term, but has remained discipline free since 1986. Pet., Ex. B at 33. He completed his GED, and gained state certification in two vocational programs, watch repair and auto body and fender repair. *Id*. at 34-

2

35. Petitioner also participated in a number of therapy and self-help programs, including Creative Conflict Resolution and a parenting course, and became involved in religious activities. Pet., Ex. B at 36; Ex. C at 4.

The psychologists who evaluated Styre have also noted substantial progress. Based on a 2004 evaluation, Dr. Russell Jordan, the senior psychologist at Petitioner's treatment center, stated that "the inmate has cemented into his consciousness a completely different lifestyle and is very committed to acting in a very Christian and moral manner in every aspect of his life." Pet., Ex. C at 4. He noted that the Petitioner has not used drugs since 1984 and showed genuine remorse and sorrow over his crime. *Id*. at 2. Dr. Jordan concluded that Petitioner's risk of dangerousness was no greater than the average citizen, and that there are no significant risk factors in this case. *Id*. at 4-5. He stated that "[i]t is unlikely that this inmate will commit any further acts of violence; even relapse into substance abuse is a low probability." *Id*. at 5.

The Board took note of Petitioner's positive evaluations, stating that the record is "replete with statements by psychologists that indicate you made a tremendous change." Pet., Ex. B at 56. The board also found that Petitioner had maintained strong family ties with his wife of ten years, as well as his children, step-children and grandchildren. *Id*. at 57-58. He had realistic parole plans, including a place to live and several job offers. *Id*. The BPT found that he did not currently pose a substantial danger to society and found him suitable for parole. *Id*. at 56.

Pursuant to the authority granted to him under Article 5, Section 8(b) of the California Constitution, the Governor reversed the BPT's grant of parole. Pet., Ex. E at 1. In his decision explaining the reversal, the Governor stated that the Petitioner planned and carried out a heinous murder, and noted the Petitioner's extensive pre-commitment criminal record and history of

substance abuse. *Id*. at 2-3. He noted that although Petitioner had participated extensively in prison self-help programs, he had only attended a limited number focused on substance abuse. *Id*. at 2.

## II. Standard of Review

Petitioner's claim is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a federal court may only grant the Petition if Styre demonstrates that the state court decision denying relief was "contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1).

## III. Discussion

### A. Timeliness of Petition

Respondent contends that the Petition is not timely because once applicable tolling periods are applied, it was filed one day after the one-year statute of limitations elapsed following the Governor's reversal of the BPT's parole suitability determination.[1] Respondent fails to note, however, that although the Governor's reversal is dated July 26, 2005, it was not actually mailed to the Petitioner until August, 11, 2005. Section 2244(d)(1) provides that the one-year limitation period shall run from the date on which the factual predicate of the claim could have been

---

[1] Under 28 U.S.C. § 2244(d)(2), the one-year statute of limitations is tolled for the time "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."

discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1). At the earliest, the statute of limitations began to run on August 11, 2005, when the Governor's office took steps to inform Styre of the reversal. Therefore, the Petition was filed within the one-year limitations period and is timely.

### B. Reversal of parole suitability finding

The Supreme Court has held that there is no constitutional right to parole, but a prisoner can nonetheless have a protected liberty interest if a state statute uses mandatory language such as shall "to 'create a presumption that parole release will be granted' when designated findings are made." *Bd. of Pardons v. Allen*, 482 U.S. 369, 377-78 (1987) *(quoting Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 12 (1979)). The Ninth Circuit has held that the California parole statute creates a protected liberty interest. *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002). Like the Nebraska and Montana statutes evaluated by the Supreme Court, the California statute uses mandatory language that creates a presumption of release.[2] *Id.*

Because the Petitioner has a protected liberty interest in parole, the court examines whether the deprivation of this interest violated due process. *See Ky. Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In the parole context, due process requires that parole board decisions are supported by "some evidence." *McQuillion*, 306 F.3d at 904; *Jancsek v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) (adopting the some evidence standard

---

[2] California Penal Code § 3041(b) provides in relevant part:

"The panel or the board, sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of public safety requires a more lengthy period of incarceration for this individual and that a parole date, therefore, cannot be fixed at this meeting..."

5

set forth by the Supreme Court in *Superintendent v. Hill*, 472 U.S. 445, 456 (1985)).[3]

Under California law, the Governor must consider the same factors as the Board when deciding to reverse a parole suitability determination. *See* Cal. Const. art. 5, § 8(b); *In re Rosenkrantz*, 29 Cal. 4th 616, 664-65, 128 Cal. Rptr. 2d 104, 146-47, 59 P.3d 174, 210 (Cal. 2002). Accordingly, the court reviews the Governor's decision to reverse a parole grant under the same procedural due process principles used to review challenges to the BPT's denial of parole. *Miller v. Davis*, 521 F.3d 1142, 1146 (9th Cir. 2008).

The court's analysis of whether the Board's or the Governor's decision is supported by some evidence is framed by the state statutes and regulations governing parole suitability determinations. *Irons*, 505 F.3d at 851. California law mandates that a parole release date be set unless the panel determines that "public safety requires a more lengthy period of incarceration ...." Cal. Penal Code § 3041(b). The BPT is charged with determining "whether the life prisoner is suitable for release on parole," and whether "the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2402(a). In determining suitability for parole, the Board is directed to consider "all relevant, reliable information," and is guided by regulations outlining factors tending to show suitability and unsuitability for parole. Cal. Code Regs. tit. 15, § 2402(b)-(d).

---

[3] Both the Petitioner and Respondent contend that the some evidence standard is not clearly established federal law as determined by the Supreme Court, and thus is not applicable under AEDPA. Petitioner claims that a clear and convincing evidentiary standard applies, and Respondent contends that due process is satisfied if an inmate is given an opportunity to be heard and advised of the reasons for the parole denial. However, the Ninth Circuit has repeatedly held that the some evidence standard is clearly established federal law and applies to habeas petitions for parole denials. *See, e.g.*, *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006); *Biggs v. Terhune*, 334 F.3d 910, 915 (9th Cir. 2003); *McQuillion*, 306 F.3d at 904.

The California Supreme Court recently clarified the statutory standard applicable to parole suitability determinations. The court stated that "the paramount consideration for both the Board and the Governor under the governing statutes is whether the inmate currently poses a threat to public safety." *In re: Lawrence*, 44 Cal. 4th 1181, 1210, 82 Cal. Rptr. 3d 169, 189, 190 P.3d 535, 552 (2008). The court rejected the notion that the existence of one or more unsuitability factors described in the regulations is necessarily sufficient to support the ultimate conclusion that the inmate currently poses an unreasonable risk of danger if released. *See Lawrence*, 44 Cal. 4th at 1210, 1212, 82 Cal. Rptr. 3d at 189, 190, 190 P.3d at 552, 553. The Board and the Governor must offer "more than rote recitation of the relevant factors with no reasoning establishing a rational nexus between those factors and the necessary basis for the ultimate decision – the determination of current dangerousness." *Id*. Accordingly, the court held that the standard of review is "whether 'some evidence' supports the conclusion that the inmate is unsuitable for parole because he or she currently is dangerous." *Lawrence*, 44 Cal. 4th at 1191, 82 Cal. Rptr. 3d at 173, 190 P.3d at 539.

Reviewing the Governor's reversal in light of *In re: Lawrence*, the court finds that the decision violates Styre's due process rights because it is not supported by some evidence of current dangerousness. *See Irons,* 505 F.3d at 852; *Lawrence*, 44 Cal. 4th at 1191, 82 Cal. Rptr. 3d at 173, 190 P.3d at 539. The Governor's denial was based on the gravity of Styre's offense and his prior criminal history. These factors, however, are insufficient unless they demonstrate that the inmate currently poses a threat to public safety. *Lawrence,* 44 Cal. 4th at 1212, 82 Cal. Rptr. 3d at 190, 190 P.3d at 553 ("the circumstances of the commitment offense ... establish unsuitability if, and only if, those circumstances are probative to the determination that a prisoner

remains a danger to the public."). There is no evidence in Styre's record that suggests he would currently pose a threat to public safety if released. As the BPT noted, Petitioner's psychological evaluators observed that Styre has made tremendous life changes and poses no greater risk of danger to public safety than an average citizen. The psychologist who conducted the most recent evaluation, Dr. Jordan, stated that "[i]t is unlikely that this inmate will commit any further acts of violence...."

The memo explaining the Governor's reversal also noted Petitioner's history of substance abuse, and raised concerns that he had participated in a limited number of substance abuse programs while in prison. By Petitioner's own admission, he frequently used drugs prior to his incarceration, and used hashish and methamphetamine during the commission of the commitment offense. The record indicates, however, that he has remained drug free for over twenty years, and does not currently have a substance abuse problem. Dr. Jordan noted that "currently there are no ongoing problems with drug or alcohol abuse and there are no recommendations for further treatment....Styre is in remission for all drug and alcohol problems....[and] relapse into substance abuse is a low probability." Because Styre's past substance abuse does not indicate that he currently poses a threat to public safety, it is insufficient to support the Governor's reversal of the Board's determination that Styre is suitable for parole. *See Lawrence*, 44 Cal. 4th at 1191, 1210, 82 Cal. Rptr. 3d at 173,189-90, 190 P.3d at 536, 553.

**IV. Conclusion**

For the reasons stated above, the court **GRANTS** the Petition for a Writ of Habeas Corpus.

IT IS SO ORDERED.

DATED: April 9, 2009

                                           **/s/ William W Schwarzer**
                                           Hon. William W Schwarzer
                                           United States District Judge